**William F. POLK, Jr., as Guardian for Holly Dawn Gish, Appellant/Cross Appellee,**

v.

**AMERICAN CASUALTY CO. OF READING, PA., Appellee/Cross–Appellant.**

**Nos. 90–SC–376–DG, 90–SC–719–DG.**

Supreme Court of Kentucky.

Sept. 26, 1991.

William F. Polk, Jr., Henderson, for appellant/cross appellee.

Henry C. Neel, Neel & Wilson, Henderson, for appellee/cross-appellant.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed the circuit court's award of prejudgment interest on a surety bond loss against the parents but did not award prejudgment interest against the bonding company.

The medical malpractice lawsuit filed by the parents of Holly Dawn Gish was settled in January of 1985 for $165,000, with a net settlement of $90,200.46. Of this amount, Holly's parents claimed $25,200.42 for themselves and the American Casualty Co. became obligated on a guardian's bond for the remaining $65,000. Holly's parents were appointed as guardians over her estate. Within three months, Holly's parents, who were drug addicts, had wasted the entire settlement. The date of the loss was fixed as April 15, 1985. In 1987, the parents were removed as guardians and the court substituted William F. Polk, the named appellant herein. Polk brought a civil lawsuit against the parents for $90,-200.46 and against American Casualty for $65,000. The jury found against both defendants. American Casualty obtained a judgment on its cross claim against the parents for $65,000. In a post-trial motion, the court awarded Holly interest dating from the loss of the funds against her parents, but denied prejudgment interest against the insurance company. An appeal was taken to the Court of Appeals which affirmed the decision of the trial court as to denial of interest against American Cas-

ualty. This Court granted discretionary review.

The issue is whether the surety on a guardian's bond can be charged with interest from the date of the loss of the ward's estate when that interest will result in a recovery larger than the face amount of the bond.

The language of K.R.S. 62.070 is clear and unambiguous. The maximum recovery against a surety on a guardian's bond is limited by that statute to the penal sum fixed in the bond. At the time relevant to this case, K.R.S. 387.070 provided that no guardian can act until he has been appointed by the proper district court and given bond to the state with good surety approved by the court for the faithful discharge of the trust or guardian. K.R.S. 387.080(2) provides that a guardian and his surety are liable for the award of damages for waste of the estate of the ward. The amount of the guardian's bond is controlled by K.R.S. 62.060 which provides that the fiduciary's bond shall be fixed in a penal sum not less than the estimated value of the estate which the fiduciary has charge of.

K.R.S. 62.070 is a statute with a long history and involves many words and phrases, but the pertinent words may be found in the clear statement as follows: "Recovery against the surety shall be limited to the amount of the penalty fixed in the bond, but recovery against the principal shall not be limited by the amount of the penalty fixed in the bond."

The judgment of the trial court against American Casualty was for $65,000, exactly the same as the penal sum fixed in the guardian's bond for the parents. The award of prejudgment interest is prohibited by K.R.S. 62.070 because such an award would make the liability of the surety exceed the penal sum fixed in the bond.

K.R.S. 62.070 replaced Kentucky statutes § 3752 and § 186d–1 when the laws were codified in 1942. Section 3752 was originally enacted in 1893 and provided that recovery against both the principal and surety was not limited by the penalty fixed in the bond. Section 186d–1 was enacted in 1908

and provided that a surety's liability was limited to the penalty fixed in the bond which repealed the earlier section with respect to extending the liability of the surety beyond the bond penalty. *See Waddle v. Wilson*, 164 Ky. 228, 175 S.W. 382 (1915).

Kentucky's court of last resort recognized the limitation on the liability of a surety imposed by Section 186d–1 in a number of cases prior to the 1942 codification of statutes. *Bankers' Surety Co. v. City of Newport*, 162 Ky. 473, 172 S.W. 940 (1915); *Morton v. Sanders*, 178 Ky. 836, 200 S.W. 24 (1918); *National Surety Co. v. Commonwealth*, 253 Ky. 607, 69 S.W.2d 1007 (1934); *Fidelity & Casualty Co. of New York v. Downey*, 284 Ky. 72, 143 S.W.2d 869 (1940); and *Rider's Exec'r v. Sherrard's Guardian*, 231 Ky. 112, 21 S.W.2d 147 (1929). *National Surety Co., supra*, acknowledges the right of a surety under the old Section 186d–1 to limit its liability on a bond. It was pointed out by the court that it was the duty of the officer taking the bond to fix the bond penalty.

■ Polk relies on *Poynter v. Smith*, 290 Ky. 169, 160 S.W.2d 380 (1942) and *National Surety Co. v. McNeill's Guardian*, 251 Ky. 509, 65 S.W.2d 721 (1933) to support his position. Our review of these cases indicates that neither opinion acknowledges the existence of Section 186d–1 of the statute at the time of their decision. *Poynter, supra*, held that Kentucky statute § 2035a–1, which is now K.R.S. 387.270 required recovery of interest from a surety in excess of the bond penalty. Clearly that statute, both in its older form and its present form imposes liability for interest only on the guardian and not on the surety. *National Surety Co. v. McNeill's Guardian, supra*, involved the common law as it existed prior to the enactment of Section 186d–1 in 1908. The adoption of the statute and the subsequent statutes overruled the common law rule.

The holdings in both *Poynter* and *National Surety Co. v. McNeill*, were in conflict with the existing statutory system at the time of their decision as well as in conflict with the current statutory requirements.

The language of the statute, K.R.S. 62.-070 is clear and unambiguous. It is now abundantly clear that the statute in question has superseded the cases of *Poynter* and *National Surety*. *Poynter* and *National Surety Co. v. McNeill* are overruled to the extent they conflict with the statute and the holding of this case.

■ The Circuit Court and the Court of Appeals were correct in applying the general rule that interest should begin to accrue against the surety on the entry of a judgment against the principal. *See Fidelity & Casualty Co. of New York v. Downey, supra; Atlantic Painting & Contracting, Inc. v. Nashville Bridge,* Ky., 670 S.W.2d 841 (1984); *Ohio Casualty v. Kentucky Natural Resources,* Ky.App., 722 S.W.2d 290 (1986).

K.R.S. 387.270 provides only for interest to be charged against guardians and not sureties. It is the guardian, not the surety, who creates the loss, not only of the principal but of any interest that might have accumulated through the proper investment of the funds. The obligation of the surety is fixed at the time of the judgment against the principal. At this point it becomes a liquidated claim and interest can begin to run in accordance with K.R.S. 360.040. *Cf. Downey, supra; Atlantic Painting & Contracting, supra.*

■ It should be observed that the alternate argument of Polk, as guardian of Holly Dawn Gish, is not properly before this Court. Polk asks that this Court hold American Casualty liable for interest in excess of the bond penalty from the date that the surety was notified of the loss. This date is not in evidence, nor was any argument presented to the trial court or the Court of Appeals regarding notice. Clearly, an issue not argued before the trial court and raised only on appeal is not properly before a reviewing court. *Kentucky Milk Marketing and Antimonopoly Com'n v. Kroger Co.,* Ky., 691 S.W.2d 893 (1985). If such a legal doctrine should be established is within proper legislative authority of the General Assembly.

■ On cross-appeal, American Casualty argues that the trial court erred in failing to permit certain deposition testimony to be read to the jury. We agree with the Court of Appeals that there may have been error, but we do not believe American Casualty suffered any prejudice as a result. Therefore the cross-appeal is dismissed.

It is the holding of this Court that a surety on the bond of a guardian is not chargeable with interest from the date of the loss to the estate of the ward when the interest will result in a recovery larger than the face amount of the bond. K.R.S. 62.070 is clear and unambiguous.

The decision of the Court of Appeals is affirmed.

COMBS, REYNOLDS and SPAIN, JJ., concur.

LEIBSON, J., dissents by separate opinion in which STEPHENS, C.J., and LAMBERT, J., join.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

KRS 387.070(1) provides that "no guardian can act until he has been appointed ... and given bond to the state with good surety approved by the court to faithfully discharge the trust or guardian." This type of "bond" is referred to as a "performance bond" because KRS 62.060 states that such bonds, "required by law for the discharge or performance of any public or fiducial office," shall require "the principal and surety or sureties ['covenant'] that the principal will faithfully discharge his duties." KRS 62.070, the statute here in question, then provides in pertinent part that "[r]ecovery against the surety shall be limited to the amount of the penalty fixed in the bond," while recovery against the principal is *not* so limited.

The Majority Opinion states "[t]he language of K.R.S. 62.070 is clear and unambiguous." This is both the beginning and the end to the reasoning in the Majority Opinion, which gleans from this conclusion that there can be no award of prejudgment interest against the surety because such would exceed the face amount of the bond.

Perhaps so, but ever since the date this statute was first enacted, March 17, 1908, the sentence in the statute which states "the recovery against the surety under any such bond shall be limited to the amount of the penalty named therein," has been clearly understood to limit only the *principal* amount recoverable against the surety, and not to limit prejudgment interest in cases where the amount due at the date of default is a sum certain. It is now almost 90 years since the statute in question was enacted, and until now the liability of the surety on a guardian's bond for prejudgment interest has depended on whether the sum involved in the guardian's default was a sum certain or an unliquidated sum which could only be resolved by a finding of fact and a judgment thereon, not on the face amount of the bond.

The Majority Opinion fails to grasp that the bonds executed pursuant to KRS 62.060 are *not liability insurance* policies committing to pay when there is a judgment against the insured, but *performance bonds* in which the surety's obligation to pay is conditioned only on default by the principal. At the moment of default the surety as well as the principal is obligated to pay. From that point on, the usual rules regarding when prejudgment interest is required, apply to the surety's obligation the same as to the principal's obligation. The surety's obligation in a performance bond is direct, not derivative, although the surety has a right to recover back his payment from the principal (if he can collect it) based on indemnity principles.

Where the guardian's default is a sum certain, the surety's liability for prejudgment interest does not turn on the principal amount stated in the surety's bond, but on the surety's failure to promptly pay its own obligation.

The Majority Opinion expressly overrules settled law on this subject in two cases of long-standing, squarely in point, not because the cases are wrong, but apparently because they are misunderstood.

The first is *National Surety Co. v. McNeill's Guardian*, 251 Ky. 509, 65 S.W.2d 721 (1933), which explains why, when the principal's default involves a sum certain that can be ascertained at the time of default, recovery against the surety is limited to the principal amount stated in the bond, but the recovery of interest is not so limited:

"Upon a breach of the condition of a penal bond, the penalty becomes, in law, a debt due, and the obligors can discharge themselves from all liability upon the bond, where the damages resulting from the breach of the condition exceeded the penalty, by the payment of the penalty alone.

Inasmuch, however, as the penalty is due so soon as the condition is broken, it carries interest as a matter of law, from that time until it is paid, and where, as in this case, the actual damages resulting from the breach of the condition, exceed the penalty with the interest from the time of the breach, the sureties in the bond should be required to pay interest upon the penalty from that time." *Id.* at 724.

The Opinion concludes "interest should run on the penal sum of the bond from the date when the loss of the funds of the wards occurred."

The second case mistakenly overruled in the Majority Opinion is *Poynter v. Smith*, 290 Ky. 169, 160 S.W.2d 380 (1942). It is the last case on the subject and the law until today. In *Poynter*, we held "a bondsman is liable for interest on the face of the bond from the date when the loss of the fund occurred to the wards," which, under the facts of the case, was the date the guardian "checked out the last cent her wards had in the bank."

As stated earlier, the bond involved is one required by law (KRS 62.060), and the statute requires a "covenant ... from the principal and surety or sureties that the principal will faithfully discharge his duties." This is the *condition* of the bond, the breach of which triggers the liability of the surety for the face amount of the bond. The question whether prejudgment interest is owed in addition to the face amount of the bond depends upon whether the sum in default at the point where this condition is

breached is a sum certain or an unliquidated amount. We have recently discussed at length the principles that control the award of prejudgment interest in *Nucor Corp. v. General Electric*, Ky., 812 S.W.2d 136 (1991). These principles govern whether the appellee, American Casualty Co. of Reading, Pa., owes prejudgment interest in this case. The question does not turn on a rule of statutory construction.

The Majority Opinion indulges in string citations as supporting a different result, but only one of the cases cited addresses the question at issue, that being *Fidelity & Casualty Co. of New York v. Downey*, 284 Ky. 72, 143 S.W.2d 869 (1940). In it our Court affirmed the trial court in disallowing prejudgment interest against the surety, but the reason was "the claim against it was an unliquidated claim and an allowance of interest on an unliquidated claim is in the discretion of the court ... trying the case." While it is true the *Downey* court cites to the language of the statute which states that "a recovery against a surety on such a bond shall be limited to the amount of the penalty named therein," this was to explain why the surety has no obligation to pay interest assessed separately against the guardian or committee, no derivative liability for interest beyond the face amount of the bond.

Prejudgment interest for which the surety is liable is that which results from the surety's own failure to pay when default occurs if the sum due is certain, and the surety has been notified and called upon to pay. If the surety fails to pay at this point, the interest for which the surety is obligated accrues by reason of the surety's failure to perform its obligation, and not simply as the guardian's indemnitor. In still another case in point, *Waddle v. Wilson*, 164 Ky. 228, 175 S.W. 382, 385 (1915), we explained:

> "The reason given for the ruling in these cases is a sound one, namely, that the default of the sureties in unjustly withholding payment after receiving notice of the default of their principal made them liable for interest by way of damages."

In the present case the evidence establishes that the date of loss of the funds is April 15, 1985, at which point the guardians had wasted the entire amount. Interest was allowed against the guardians from that date, but denied against their surety, the appellee, American Casualty Co. of Reading, Pa. Because the amount of the loss involved was a sum certain, such interest was proper. The surety was obligated to pay the face amount of its bond on the date of the default, or at least as soon thereafter as it was notified of the loss of the funds. If the date the surety was notified of the loss was substantially later than the date of the default, the surety's interest obligation should run from the later date. Because the trial court refused to award any interest, the date of notice of the loss to the surety was not established. The case should be reversed and remanded to the trial court to award prejudgment interest accordingly.

I respectfully suggest that our Majority Opinion is seriously flawed for two reasons:

1) It goes off on a tangent, a rule of statutory construction which requires that we accord words of a statute their literal meaning. But the literal meaning of the words of the statute is not the issue here.

2) It overrules well-reasoned authority of long-standing, *Poynter v. Smith* and *Natural Surety Co. v. McNeill's Guardian*, in flagrant disregard of the principle of *stare decisis*.

These two cases exhibited a proper understanding of the underlying legal principles involved, including the statute limiting recovery against the surety to the amount of the penalty fixed in the bond. The question is not whether the liability of the surety is so limited, but what is the obligation of the surety to pay prejudgment interest when the condition obligating it to prompt payment occurs (i.e., the default of the principal), and the surety fails to pay as it is then obligated to do.

STEPHENS, C.J., and LAMBERT, J., join this dissent.