OHIO CASUALTY INSURANCE COMPANY, Appellant,

v.

Sarah B. WILSON (now Kayser), as Guardian for Sarah Neal Wilson, a Minor, and Sarah B. Wilson (now Kayser), Appellee.

No. 94–CA–2089–MR.

Court of Appeals of Kentucky.

Feb. 23, 1996.

Rehearing Denied April 19, 1996.

Delores Pregliasco, Melanie Straw–Boone, Landrum & Shouse, Louisville, for appellant.

Steven O. Thornton, Kenneth P. O'Brien, Broderick, Thornton & Pierce, Bowling Green, for appellee.

Before GUDGEL, HOWERTON and KNOPF, JJ.

KNOPF, Judge:

Ohio Casualty Insurance Company (Ohio) appeals from a jury verdict awarding Sarah B. Kayser, who goes by the name Diane, as guardian for her minor daughter, Sarah Neal Wilson, $72,300 against Ohio for its obligation as the surety on a performance bond. After reviewing many issues in this appeal regarding conflict of interest, a surety's right of indemnification from co-guardians, jury instructions and apportionment, and prejudgment interest, we affirm the trial court on some issues and reverse and remand the case on other issues.

On March 23, 1981 Diane Kayser (formerly Wilson), and her husband Michael L. Wilson were appointed co-guardians of their infant daughter Sarah's estate. Sarah was injured in an automobile accident. In settlement of Sarah's claim, the district court authorized Diane and Michael to accept $35,966.74. At that time, Diane and Michael purchased a performance bond issued by Ohio for $35,-966.74.

Initially, Michael and Diane invested Sarah's settlement proceeds in certificates of deposit and bank stock. In the fall of 1985, the Wilsons initiated divorce proceedings and Diane learned that Michael had diverted the entire amount of money from Sarah's estate into his various business ventures. In 1986 the Wilsons' divorce became final and Michael was removed as a guardian. Michael repaid the estate $10,000.00 and wrote a promissory note for the remaining $25,-966.74, which Diane accepted on behalf of Sarah. Later, Michael called Diane and said his business would go under if she did not loan him $7,300.00 from Sarah's estate. Fearing that Michael would not pay his child support if his business failed, Diane loaned him the $7,300.00 in return for a promissory note and his oral promise to pay the money back in two weeks.

Michael failed to pay both promissory notes. Instead, he filed for bankruptcy. No party objected to the notes being listed as dischargeable debts. On February 4, 1991 the promissory notes were discharged in bankruptcy.

On January 5, 1993, Diane filed a complaint against Michael for breach of his fiduciary duty as a guardian and against Ohio for its obligation as the surety on the bond. Michael filed a motion to dismiss himself from the lawsuit based on his discharge in bankruptcy. The trial court granted the motion explaining that Michael "shall remain as a named defendant in this action for the purposes of the Plaintiff's (Diane's) prosecution of claims as against the defendant, Ohio Casualty Insurance Company. As such, the defendant, Michael L. Wilson, shall not be exposed to any personal or money judgment and shall not be required to respond to discovery as if he were a nonparty to this action." [sic] Neither Diane nor Ohio appealed from this order.

Ohio filed a counterclaim against Diane seeking indemnification for Diane's breach of her duty as guardian to the estate. Ohio then moved to join Diane as a defendant. The trial court granted the motion. Subsequently, Ohio moved the court to dismiss the complaint because Diane could not effectively represent the estate against herself. Ohio

claimed that the conflict of interest justified dismissal of the complaint. The court denied this motion. Ohio also made a motion to remove Diane as guardian based on the conflict of interest, which the court denied. The case went to trial and the jury returned a verdict for Sarah's estate in the amount of $72,300.00.

In this appeal Ohio first argues that the case should be dismissed because, as a surety, Ohio is not obligated to pay the bond until a guardian has committed an act resulting in a loss to the estate. Ohio contends that the jury in this case found that Diane did not commit any breach of her fiduciary duties as per the jury's verdict for instruction no. III.[1] Consequently, Ohio reasons that since Diane was the only guardian who was a party at trial, and she did not breach any duty, then Ohio cannot be liable as the surety. Ohio argues that the surety has no liability to pay on a bond unless the principal is liable.

To make this argument, Ohio relies on jury instruction no. III which it later condemns in its brief. Regardless of Ohio's contradictory arguments, we believe that all the jury verdicts were unreliable because of Diane's conflict of interest, as discussed below.

Furthermore, Diane was not the only principal involved in this case. Michael was also a principal on the bond. The trial court properly retained Michael as a named defendant for the purpose of prosecuting the estate's claims. At trial, substantial evidence was offered regarding the alleged breach of duties by both Michael and Diane. Thus, we believe the estate maintains a viable cause of action against Ohio for the default by Michael and Diane.

■ Next, Ohio alleges that a conflict of interest arose when Sarah's estate was represented by the same person who was also a named defendant. While we agree with the trial court that this conflict of interest was not appropriate grounds for dismissal of the case, we do believe that the appropriate remedy would have been to remove Diane as guardian during the pendency of this action.

In the opening statements, plaintiff's counsel said that the estate will not be making a claim for the $7,300.00 which Diane loaned to Michael. Counsel clearly informed the jury that this amount should be "taken out" of the claimed damages. He said that *Diane* will be penalized for that amount. Diane admitted in her direct examination that she was responsible for the loss of $7,300.00. She testified that she should have known that Michael would not pay the money back to the estate. On cross-examination, Diane testified that she did not have the $7,300.00 and has not paid the money to the estate. Finally, plaintiff's own expert witness on damages subtracted the $7,300.00 from the total loss of the estate. In short, Diane was not penalized, Sarah was.

We cannot imagine any facts that would present a clearer case for a conflict of interest and harm resulting from that conflict. Diane, on Sarah's behalf, failed to pursue a claim for a certain amount of loss that occurred to Sarah's estate. Diane did not obtain a judgment for that amount nor did she confess judgment against herself even though she seemed to confess liability. At the very least, Sarah's estate suffered from the failure to pursue the $7,300.00 portion of the claim.

Diane's conflict inevitably arose from her dual role representing Sarah and defending against the estate's claims. Trial strategy

---

1. Instruction number III reads as follows:
    You will find for the Defendant, Ohio Casualty, if and only if you believe from the evidence that [Diane]:
    (a) knowingly participated in a breach of trust committed by her co-guardian, Michael Wilson; or
    (b) improperly delegated the administration of the estate to her co-guardian; or
    (c) approved or concealed a breach of trust committed by her co-guardian; or
    (d) failed to exercise reasonable care in the administration of the estate, and that such failure enabled her co-guardian to commit a breach of trust; or
    (e) neglected to take proper steps to compel her co-guardian to redress or remedy a breach of trust.
    Otherwise, you shall find for the Defendant, [Diane].

could not and did not absolve that conflict. In *Kentucky Bar Association v. Roberts,* Ky., 579 S.W.2d 107 (1979) an attorney was suspended from practice because he represented the plaintiff in one suit and the defendant in another lawsuit. The court explained that the two cases arose from a common fact situation, so that the attorney's dual representation created an actual conflict of interest.

The facts presented in this case are worse than those in *KBA v. Roberts, supra.* Here, Diane represented the plaintiff and at the same time was an actual defendant in the very same lawsuit. The conflict was further aggravated because Diane represented the actual plaintiff, rather than being the plaintiff herself. If Diane had been the plaintiff, at least she would have been aware of her conflicting interests and the compromises her case would have to make. But Sarah, a minor, was the actual plaintiff who relied on her guardian, Diane, to represent her interests fully and without compromise. Upon remand of this case, Diane should be removed as guardian before any further disposition or action is taken on behalf of Sarah. The trial court should appoint a guardian to bring these claims on Sarah's behalf. After the case has been resolved, the court can then consider reappointing Diane as guardian should the circumstances warrant.

■ This conflict of interest may have also lead to the misleading jury instruction no. III. [See footnote 1, above.] The intended purpose of the instruction was for the jury to determine if Ohio had any right of indemnification from Diane. If the jury did conclude that Diane committed a wrongful act, then it was to determine Diane's and Michael's percentage of fault. The jury found, however, that Diane did not commit any wrongful act, thus leaving Ohio with no right of indemnification from Diane.

Despite the intended purpose of the instruction, we agree with Ohio, that the instruction suggests that if Diane committed one of the listed misdeeds, Diane would lose and Ohio would win. When Diane represent-

ed the plaintiff and also was a defendant, this choice between Diane and Ohio left the jury with the impression that the only way for Sarah to get her money returned would be for the jury to find against Ohio and for Sarah's mother in this instruction. This choice for the jury was not a proper statement of the law.

■ Sarah had a right to bring an action on the bond. KRS 62.070. Ohio then has a right to seek indemnification from the guardians who committed any wrongful act. See, KRS 412.080 and *Non–Marine Underwriters v. Carrs Fork Coal Co.,* Ky., 421 S.W.2d 852 (1967). Co-guardians are not jointly and severally liable for the misdeeds of each other. Their liability to Ohio is limited to the extent of his or her fault as determined by the jury in an apportionment instruction. As *Dix & Associates v. Key,* Ky., 799 S.W.2d 24, 27 (1990) explained, "it is ... fundamentally unfair to require one joint tortfeasor who is only five percent at fault to bear the entire loss when another tortfeasor has caused ninety-five percent of the loss." Additionally, Michael's percentage of fault can be properly determined by the jury as well as Diane's. The Court in *Prudential Life Ins. Co. v. Moody,* Ky., 696 S.W.2d 503 (1985) upheld apportionment between defendants even though one defendant had been dismissed based on the statute of limitations.

With Diane as only the defendant, not the guardian, in a re-trial of this case, proper jury instructions should list Diane's duties as guardian and co-guardian and ask the jury if Diane breached any of the duties. The jury should find for Sarah if a breach did occur. Another instruction should list Michael's duties as guardian and co-guardian and ask the jury if Michael breached any of these duties. Again, the jury should find for Sarah if a breach did occur. If the jury believes that both Michael and Diane breached any duty, then it should apportion fault between them. Then, the jury should determine the amount of actual damages to the estate. Ohio is responsible for paying the award to Sarah's estate and then seeking indemnifica-

tion from Diane for her respective percentage of damages based on fault. Ohio would have also been able to seek indemnification from Michael had he not been discharged in bankruptcy of which Ohio received notification and did not object.

The last issue addresses Ohio's liability for prejudgment interest. The face amount of the bond was $35,966.74. The jury awarded $72,300.00. The excess was supposedly prejudgment interest from the date of notice to Ohio. Ohio argues that it is not liable for prejudgment interest pursuant to the holding of *Polk v. American Casualty Co.*, Ky., 816 S.W.2d 178 (1991).

The Court in *Polk* stated, "It is the holding of this Court that a surety on the bond of a guardian is not chargeable with interest from the date of loss to the estate of the ward when the interest will result in a recovery larger than the face amount of the bond." *Id.* at 180. Diane argues, and we agree, that the holding in *Polk* is limited to a claim for interest from the date of loss. The Court specifically left undecided whether a party can seek prejudgment interest from the date of notice of the loss. In this regard the Court wrote:

> Polk asks that this Court hold American Casualty liable for interest in excess of the bond penalty from the date that the surety was notified of the loss. This date is not in evidence, nor was any argument presented to the trial court or the Court of Appeals regarding notice. Clearly, an issue not argued before the trial court and raised only on appeal is not properly before a reviewing court. *Id.* at 180.

The dissent in *Polk, supra,* discussed the appropriateness of prejudgment interest after the surety had been notified of the claim. The opinion explained:

> Prejudgment interest for which the surety is liable is that which results from the surety's own failure to pay when default occurs if the sum due is certain, and the surety has been notified and called upon to

pay. If the surety fails to pay at this point, the interest for which the surety is obligated accrues by reason of the surety's failure to perform its obligation, and not simply as the guardian's indemnitor. *Id.* at 182.

*Waddle v. Wilson*, 164 Ky. 228, 175 S.W. 382 (1915) further held that prejudgment interest could be fairly awarded when the surety unjustly withheld payment after receiving notice of default of the principal.

We also note that KRS 387.080 provides that a surety will be liable on the bond for damages including reasonable attorney's fees and costs incurred in collecting damages. This statute provides legislative authority for sureties being liable for more than the face amount of the bond.

■ Consequently, we hold that the principles enunciated in *Nucor Corp. v. General Electric*, Ky., 812 S.W.2d 136 (1991) control this situation where the surety has been notified. The Court, in *Nucor* explained that the decision to award prejudgment interest was an issue to be decided by the trial judge and not the jury. The Court further held that prejudgment interest was appropriate when the damages are fixed and certain.

The loss to Sarah's estate was a fixed and liquidated amount. Thus, under the above principles, we hold that in an appropriate instruction, the jury should determine the date of notice to Ohio of the loss and specify the month, date [2] and year of the notice. Then the trial judge should calculate the amount of prejudgment interest that Ohio owes from the date of notice of loss.

Although Diane argues that she was only entitled to interest from the date of notice, the jury's award could not have been limited to that time period. Diane's expert witness on damages proved an amount in excess of $76,000.00. He explained that if the money had remained in certificates of deposits and bank stock from 1981 to the present, they would be worth about $76,000.00 by the time of trial. The jury found that Ohio was not notified of the loss until January 1993 when Diane brought this lawsuit. The trial oc-

---

2. At trial, the jury only determined the month and year of the date of loss.

curred in April 1994. Thus, the jury awarded about $36,334.00 in interest for supposedly fifteen months. Obviously, the jury did not limit the award of interest to the fifteen months. Ohio cannot be responsible for a loss of which it had no notice. Awarding interest for the loss of money before 1993 was erroneous. On remand the trial judge should determine prejudgment interest from the date of notice of default to Ohio.

■ Finally, while Ohio's liability for prejudgment interest is limited to time from the date of notice, Diane and Michael's liability for prejudgment interest is not so limited. The principals are liable for interest from the date of the loss. Thus, the jury should also determine the date of loss, specifying the month, date and year. The trial judge can then calculate the amount of prejudgment interest owed by the principals. Sarah's estate can then seek the amount of prejudgment interest from the principals independently of the amount of interest collected from Ohio.

All concur.